# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | | |
|---|---|---|
| MICHAEL MAYS, | ) | |
| AIS #252553 | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Case No.  4:14-cv-00808-LSC-HGD |
| vs. | ) | |
| | ) | |
| LIEUTENANT SCOTT, et al., | ) | |
| | ) | |
| Defendants | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The plaintiff filed a *pro se* complaint seeking monetary damages and injunctive relief pursuant to 42 U.S.C. § 1983 for violations of his civil rights.  (Doc. 1).  The plaintiff names the following defendants in the complaint: Lieutenant LaTonya Scott, former Sergeant John Shoebridge, Correctional Officer Daniel Jackson, and Correctional Officer Willie McLemore.[1]  (*Id.* at 3).  The plaintiff seeks monetary and injunctive relief.  (*Id.* at 4).  In accordance with the usual practices of this court and

---

[1]    The plaintiff named additional defendants in his complaint.  (Doc. 1).  On February 4, 2015, the magistrate judge recommended that all of the plaintiff's claims be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) with the exception of his Eighth Amendment failure to protect claims against defendants Scott, Shoebridge, Jackson, and McLemore.  (Doc. 8).  On March 25, 2015, the district judge accepted the magistrate judge's recommendation and dismissed all of the plaintiff's claims with the exception of his Eighth Amendment failure to protect claims against defendants Scott, Shoebridge, Jackson, and McLemore.  (Doc. 10).

28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

## I. Procedural History

On April 28, 2015, the undersigned entered an Order for Special Report directing the Clerk to forward copies of the complaint to each of the named defendants and directing the defendants to file a special report addressing the plaintiff's factual allegations. (Doc. 11).  The undersigned advised the defendants that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, the court would consider it as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (*Id.*).

On July 13, 2015, defendants Scott and McLemore filed a special report, supplemented by affidavits and other evidence. (Doc. 21).  On November 23, 2015, defendant Shoebridge submitted an affidavit and adopted defendants Scott and McLemore's special report.[2] (Doc. 32).  On October 24, 2016, defendant Jackson

---

[2]     Shoebridge is no longer employed with the Alabama Department of Corrections. (Doc. 32-1, Shoebridge Aff. at 1).

submitted an affidavit and adopted defendants Scott and McLemore's special report.[3] (Doc. 37).

The undersigned notified the parties that the court would construe the special report as a motion for summary judgment and notified the plaintiff that he had twenty-one (21) days to respond to the motion for summary judgment by filing affidavits or other material.  (Docs. 33, 38).  The undersigned also advised the plaintiff of the consequences of any default or failure to comply with Fed. R. Civ. P. 56.  (*Id.*).  *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).  The plaintiff filed several responses.  (Docs. 35, 39, 41).

This matter is now before the court on the defendants' motion for summary judgment and the responses thereto.

## II. Standard of Review

Because the court has construed the defendants' special report as a motion for summary judgment, Fed. R. Civ. P. 56 governs the resolution of the motion.  Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences

---

[3]      Defense counsel notified the court that defendant Jackson would be on active military duty until the latter part of 2016. (Doc. 21 at 1; Doc. 21-3, Northcutt Aff. at 1).

against the moving party. *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532.

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d

1093, 1095 (11th Cir. 1986)).  Additionally, because the plaintiff is *pro se*, the court must construe the complaint more liberally than it would pleadings drafted by lawyers.  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).  "*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

### III. Summary Judgment Facts[4]

On December 20, 2013, at approximately 1:00 p.m., the plaintiff was on his way to lunch and walked through the guard shack past Lieutenant LaTonya Scott, former Sergeant John Shoebridge, Officer Young, and Officer Daniel Jackson. (Doc. 1 at 5; Doc. 35 at 3).  Inmate Charles Hastings came up behind the plaintiff and stabbed him twice in the neck.  (*Id*.).  The plaintiff turned around and punched Hastings.  (Doc. 35 at 3).  Hastings then stabbed the plaintiff in his right shoulder. (*Id*.).  The plaintiff "rushed" Hastings, lifting him from the ground. (*Id*.).  Hastings stabbed the plaintiff six more times in the back.  (*Id*.).  The plaintiff "slammed [Hastings] head first into a ditch." (*Id*.).  The plaintiff attempted to take the knife away from Hastings, but realized it was wrapped with black shoe string and taped to

---

[4]     Based on the foregoing summary judgment standard, the following facts are undisputed or, if disputed, taken in a light most favorable to the plaintiff.  Factual disputes are addressed in footnote form.

his right hand. (*Id*.). The plaintiff then applied weight to Hastings' right hand. (*Id*.). The plaintiff claims the officers "finally tried to intervene" at this point (*Id*.). The plaintiff was bleeding profusely from his neck. (Doc. 1 at 5). He stood up and began to run. (*Id*.). The plaintiff contends he fought Hastings "for several minutes and struggled for his life while the defendants sat and watched." (Doc. 41 at 1). The plaintiff states that some of his stab wounds could have been prevented had the defendants intervened to protect him.[5] (*Id*.).

Lieutenant Scott observed inmate Hastings and the plaintiff fighting. (Doc. 21-1, Scott Aff. at 1). Scott immediately called a code "10-17."[6] (*Id*.). Lieutenant Scott then observed inmate Hastings strike the plaintiff several times with the inmate made knife before both inmates fell to the ground. (*Id*.).

Sergeant Shoebridge observed inmate Hastings striking the plaintiff in the back and neck with an inmate made knife.[7] (Doc. 32-1, Shoebridge Aff. at 1). The plaintiff was attempting to get away from inmate Hastings, but was unsuccessful due

---

[5]     The plaintiff alleged in his complaint that officers chased him, swinging their batons and spraying mace. (Doc. 1 at 5). He later acknowledges that no officer hit him or sprayed him with mace. (Doc. 41 at 5).

[6]     The plaintiff claims Lieutenant Scott called a code for inmates fighting without a weapon. (Doc. 35 at 7; Doc. 39 at 4).

[7]     Sergeant Shoebridge states he was located between the Chow Hall entrance and the Big-T, monitoring inmate movement when he heard Scott's call over the radio. (Doc. 32-1, Shoebridge Aff. at 1). He alleges he then responded to the call. (*Id*.).

to Hastings holding onto the plaintiff with his left hand.  (*Id*.).  As Shoebridge got closer to the inmates, he observed both inmates fall down in a storm water drainage ditch behind J-Dormitory.  (*Id*.).  Shoebridge took control of Hastings' right hand, yielding the inmate made knife, and gave Hastings a direct order to release Mays. (*Id*.).  Hastings complied with Shoebridge's order.  (*Id*.).  Sergeant Shoebridge then removed the inmate made knife from Hastings' hand.  (*Id*.).  Hastings had used tape and shoe strings to secure the knife to his hand and wrist.  (*Id*.).  Shoebridge turned the knife over to Lieutenant Scott.  (*Id*.).  Hastings further complied with Officer Lind's order to remain on the ground.  (Doc. 21-5 at 15).  Officer Lind then placed handcuffs on Hastings.[8]  (*Id*.).

On this day, Officer Willie McLemore was assigned as the Breezeway Officer. (Doc. 21-2, McLemore Aff. at 1).  He controlled access from the yard to the infirmary by opening a secured gate.  (*Id*.).  McLemore observed the plaintiff running towards the gate, stating that he had been stabbed.  (*Id*.).  Officer Jackson was following the plaintiff.  (Doc. 41 at 3).  Officer McLemore did not immediately open the gate.

---

[8]      Correctional Officer Jackson states that he was working his post in the tunnel when a code came over the radio of inmates fighting with weapons.  (Doc. 37-1, Jackson Aff. at 1).  He claims he was not present at the time of the stabbing.  (*Id*.). Jackson states he drew his baton and responded to the code.  (*Id*.).  Upon entering the area of the incident, Jackson claims he saw the plaintiff running from the scene, covered in blood.  (*Id*.).  Jackson began chasing the plaintiff when Lieutenant Scott yelled, "Officer Jackson[,] he [has] been stabbed[.] [G]et him to the Infirmary." (*Id*.).

(Doc. 1 at 6; Doc. 35 at 4).  Lieutenant Scott instructed McLemore over the radio to let the plaintiff through the gate.  (Doc. 35 at 4, 10).  McLemore complied and allowed the plaintiff and Officer Jackson to pass to the infirmary.[9]  (Doc. 41 at 3).

The plaintiff arrived at the infirmary at approximately 1:07 p.m.  (Doc. 21-5 at 7, 15).  Medical staff noted that the plaintiff was ambulatory to the infirmary and was holding pressure to the right side of his neck.  (Doc. 21-5 at 7).  Medical staff further noted the plaintiff had a total of eight (8) stab wounds and abrasions to both knees.  (*Id.*).

---

[9]    In his complaint, the plaintiff alleges McLemore would not allow him through the gate to go to the infirmary.  (Doc. 1 at 6).  He claims he fell to the ground, holding his neck.  (*Id.*).  The plaintiff alleges he laid on the ground in a pool of blood while officers surrounded him.  (*Id.*).  He asserts the officers did not help him and one remarked that he was dead.  (*Id.*).  The plaintiff claims at that point, McLemore opened the gate and he crawled in, pulled himself to his feet, and went to the infirmary.  (*Id.*).

In one of his responses to the defendants' motion for summary judgment, the plaintiff alleges McLemore "hesitated" in opening the gate.  (Doc. 35 at 4).  He claims he heard Lieutenant Scott yell on the radio for McLemore to let the plaintiff in.  (*Id.* at 4, 10).  Once McLemore opened the gate, the plaintiff entered the breezeway and kneeled as "they began to look for the key."  (*Id.* at 4).  The plaintiff alleges once Officer Jackson found the key and opened the second gate, he was "up and running again" to the infirmary.  (*Id.*).

Officer McLemore states that when he saw the plaintiff running towards the gate, Officer Jackson was escorting him.  (Doc. 21-2, McLemore Aff. at 1).  McLemore further states Jackson yelled for him to open the gate.  (*Id.*).  McLemore contends he opened the gate and allowed the plaintiff and Officer Jackson to pass to the infirmary.  (*Id.*).  McLemore denies the plaintiff's claim that he was slow to allow the plaintiff to come through the gate for medical treatment.  (*Id.*).  McLemore claims that he opened the gate as soon as the plaintiff and Jackson approached the gate.  (*Id.*).

At approximately 1:08 p.m., Lieutenant Scott entered the infirmary and questioned the plaintiff about the incident.  (Doc. 21-5 at 15).  The plaintiff stated, "I didn't do anything to this inmate.  He just came up behind me and stabbed me in the neck.  I was fighting for my life." (*Id.*).

At approximately 1:09 p.m., Dr. David Pavlakovic began treating the plaintiff for multiple stab wounds and ordered that the plaintiff be transported to the emergency room at UAB Hospital.  (Doc. 21-5 at 15-16).  At approximately 1:12 p.m., Lieutenant Scott exited the infirmary en route to the breezeway to question inmate Hastings about the incident.  (*Id.* at 15).  Hastings responded, "I don't like to be disrespected and that's what he did and I don't have nothing else to say." (*Id.*).

At about 1:20 p.m., Officer James Burton escorted paramedics Josh Vincent and LeeAnn Rigsby to the infirmary.  (*Id.* at 16).  Vincent informed Dr. Pavlakovic that due to the severity of the plaintiff's injuries, he needed to be transported to UAB Hospital by helicopter.  (*Id.*).  At 1:29 p.m., the ambulance service exited the infirmary with the plaintiff and Officer Jackson and drove to the front parking lot of the facility.  (*Id.*).  At approximately 1:44 p.m., Springville and Odenville Police Departments arrived at St. Clair and reported the helicopter was eight (8) minutes from landing at the site.  (*Id.*).  At approximately 1:52 p.m., the helicopter landed at

St. Clair.  (*Id*.).  At about 2:10 p.m., the helicopter exited the facility en route to UAB Hospital. [10]  (*Id*.).

The plaintiff alleges there have been over one hundred (100) inmate-on-inmate assaults at St. Clair, including murders, in the last five (5) years.  (Doc. 1 at 6-7).  He claims that a lack of security and overcrowding has created a hostile, violent environment for inmates and officers.  (*Id*.).  The plaintiff further claims the defendants are aware of understaffing and the substantial risk of harm facing inmates. (*Id*. at 7).

For relief, the plaintiff requests a jury trial, monetary relief, and a "review and change in policies concerning security" and review of "inmate-on-inmate assaults in the last ten (10) years" at St. Clair.[11]  (Doc. 1 at 4).

---

[10]    The plaintiff spends considerable time in his responses discussing the alleged inadequate treatment he received while in the infirmary and prior to his flight to UAB Hospital. (Docs. 35, 39, 41). However, the plaintiff did not allege medical care claims in his complaint and he has not named any member of the prison medical staff as a defendant in this action.  While the plaintiff claims McLemore delayed the plaintiff's access to the infirmary by failing to quickly open the gate, the plaintiff does not associate defendants Scott, Shoebridge, Jackson, or McLemore with any of his claims of inadequate medical care.  Therefore, these medical claims are not properly before the court and will not be considered.

[11]    The plaintiff also moved for appointment of counsel.  (Doc. 1 at 4).  On November 18, 2014, the undersigned denied the plaintiff's motion for appointment of counsel.  (Doc. 7).

## IV. Analysis

The plaintiff alleges defendants Scott, Shoebridge, and Jackson failed to intervene to protect him once inmate Hastings attacked him.  (Doc. 1 at 5).  He contends he fought Hastings "for several minutes and struggled for his life while the defendants sat and watched."  (Doc. 41 at 1).  The plaintiff states that some of his stab wounds could have been prevented had the defendants intervened to protect him. (*Id.*).  He further claims there was ample time for the defendants to intervene but the officers did not act until the plaintiff "overcame his attacker."  (Doc. 35 at 12).  The plaintiff also alleges defendant McLemore failed to immediately open the gate to allow him access to the infirmary.  (Doc. 1 at 5-6).

(1)     Failure to Protect/Intervene – Defendants Scott, Shoebridge & Jackson

The Eighth Amendment's prohibition on cruel and unusual punishment imposes upon institutional officers the duty to "'take reasonable measures to guarantee the safety of the inmates'" in their custody.[12] *Farmer v. Brennan*, 511 U.S.

---

[12]     To the extent the plaintiff seeks to state claims for excessive force and violation of his right to due process based on the defendants' failure to intervene in the attack, such claims are not proper. (Doc. 35 at 13).  The plaintiff does not allege that any defendant used excessive force against him. Additionally, because the plaintiff is a convicted prisoner, his claims against the defendants are analyzed under the Eighth Amendment rather than the Fourteenth Amendment's Due Process Clause.  *See Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due

825, 832-33 (1994) (quotation marks and citations omitted).  It is clear, however, that not every injury suffered by an inmate "translates into constitutional liability for prison officials responsible for [the inmate's] safety." *Farmer*, 511 U.S. at 834; *see Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986).  "'In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature.'" *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting *Wright v. El Paso County Jail*, 642 F.2d 134, 136 (5th Cir. 1981)); *see Gullatte v. Potts*, 654 F.2d 1007, 1012 (5th Cir. 1981). [13]   It is when institutional officials' deliberate indifference to a known danger or risk exposes an inmate to objectively, "sufficiently serious" harm, that a constitutional violation occurs. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("When officials become aware of a threat to an inmate's health and safety, the [E]ighth [A]mendment's

---

Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.").

[13]     In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

proscription against cruel and unusual punishment imposes a duty to provide reasonable protection.").

A danger or risk is "known" only if the institutional official is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . draw[s] th[at] inference." *Farmer*, 511 U.S. at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not," is not sufficient to establish liability on the part of the official. *Id*. at 838. Furthermore, the known risk of injury must be a "'strong likelihood, rather than a mere possibility.'" *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989) (quoting *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1146 (7th Cir. 1983)).

Once it is established that an institutional official knew of a substantial danger or risk to an inmate, it must then be shown that the official was deliberately indifferent to that risk. "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Deliberate indifference requires "a state of mind more blameworthy than negligence." *Id*. at 835. Finally, the plaintiff must produce sufficient evidence that the defendant's deliberate indifference

to a known danger or risk caused the plaintiff's constitutional injury. *See Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

As an initial matter, the plaintiff alleges for the first time in his response to the defendants' motion for summary judgment that inmate Hastings was known to be "very dangerous" and "[posed] a serious danger to guards and inmates." (Doc. 35 at 11, 12). The plaintiff contends prison officials should have segregated Hastings due to his violent pattern of behavior. (Doc. 39 at 5).

The plaintiff does not allege that he complained to the defendants – or any prison official for that matter – that he was in danger of being attacked by inmate Hastings. There is no evidence that the plaintiff notified any defendant of a specific prior incident or threat by Hastings from which it could be inferred that a substantial risk of harm existed. Indeed, the plaintiff told defendant Scott after the attack, "I didn't do anything to this inmate. He just came up behind me and stabbed me in the neck." (Doc. 21-5 at 15). Thus, the plaintiff has failed to establish that the defendants had a subjective awareness of a substantial risk of serious harm to him from inmate Hastings *before* the attack occurred.

The plaintiff further alleges that defendants Scott, Shoebridge, and Jackson failed to timely intervene once inmate Hastings began attacking him. "Prison

correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence.  However, in order for liability to attach, the officer must have been in a position to intervene." *Terry v. Bailey*, 376 Fed. App'x 894, 896 (11th Cir. 2010) (citing *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)).  An officer who fails to intervene in a fight between inmates can only be held liable if he or she "was physically able and had a realistic chance to intervene and act in time to protect the inmate plaintiff."  *Glispy v. Raymond*, No. 06-14269, 2009 WL 2762636, at *3 (S.D. Fla. Aug. 28, 2009) (discussing *Ensley*, 142 F.3d at 1407-08).  The plaintiff has the burden of demonstrating that the defendant was in a position to intervene but failed to do so. *Ledlow v. Givens*, 500 Fed. App'x 910, 914 (11th Cir. 2012) (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1330-31 (11th Cir. 2008)).

The plaintiff claims defendants Scott, Shoebridge, and Jackson "watched the entire incident [but] failed to intervene until Mays had the situation under control." (Doc. 35 at 9; Doc. 35 at 12).  He contends he fought Hastings "for several minutes and struggled for his life while the defendants sat and watched." (Doc. 41 at 1).  As such, the plaintiff has alleged that the attack continued for a sufficient duration that

Scott, Shoebridge, and Jackson were in a position to intervene to stop the attack but failed or refused to do so.

Defendant Scott states that she immediately called a code "10-17" when she observed inmate Hastings and the plaintiff fighting. (Doc. 21-1, Scott Aff. at 1). She states she then observed inmate Hastings striking the plaintiff several times with an inmate made knife before both inmates fell to the ground. (*Id*.).

Defendant Shoebridge claims that as he approached the scene, he observed inmate Hastings strike the plaintiff in the back and neck with an inmate made knife. (Doc. 32-1, Shoebridge Aff. at 1). He alleges the plaintiff was attempting to get away from Hastings, but was unsuccessful. (*Id*.). Shoebridge states that as he got closer, he saw both inmates fall down a storm water drainage ditch. (*Id*.). Shoebridge states he then grabbed inmate Hastings' right hand and ordered him to release the plaintiff, to which Hastings complied. (*Id*.).

Defendant Jackson states that he was working his post in the tunnel when he received defendant Scott's call. (Doc. 37-1, Jackson Aff. at 1). He alleges that he was not present during the time of the stabbing. (*Id*.). Jackson states that when he arrived on the scene, he observed the plaintiff running from the scene, covered in blood. (*Id*.).

It is well established that assessing the credibility of the allegations made by the plaintiff or defendants is beyond the scope of a trial court's ruling on a motion for summary judgment. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also, Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742-43 (11th Cir. 1986). The facts presented by the parties show that a genuine dispute exists between the plaintiff's and the defendants' versions of the facts in connection with the December 20, 2013, assault. Therefore, defendants Scott, Shoebridge, and Jackson's motion for summary judgment on the plaintiff's Eighth Amendment failure to intervene claims is due to be denied.

The defendants argue that they are entitled to qualified immunity as to the plaintiff's failure to intervene claims. (Doc. 21 at 6-11). "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quotation marks omitted). To obtain qualified immunity, the government official "must first prove that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quotation marks omitted). "Once the

defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity in not appropriate." *Id*. The plaintiff must show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) (footnote omitted).

There is no dispute that defendants Scott, Shoebridge, and Jackson were acting within the scope of their discretionary authority at the time of the assault on December 20, 2013. *See Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) ("discretionary authority" includes "all actions of a government official that (1) 'were undertaken pursuant to the performance of his duties,' and (2) were 'within the scope of his authority'") (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)). Therefore, to defeat qualified immunity, the plaintiff must establish a genuine issue of material fact regarding whether the officers violated his constitutional rights.

As stated previously, the plaintiff's version of the facts establishes that defendants Scott, Shoebridge, and Jackson violated the plaintiff's constitutional rights by failing to intervene and protect him from inmate Hastings' assault. Moreover, the duty of an officer to protect inmates in their care from assault by another inmate was clearly established for years when the defendants allegedly failed to intervene and

protect the plaintiff in this instance.  *See Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (holding that "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners" and that "[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society") (quotation marks and citations omitted); *Wilson v. Seiter,* 501 U.S. 294, 303 (1991) (describing "the protection [an inmate] is afforded against other inmates" as a "condition of his confinement" subject to the strictures of the Eighth Amendment); *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986) (finding that it is "well settled that a prison inmate has a constitutional right to be protected from the constant threat of violence and from physical assault by other inmates").

Because a factual dispute exists as to whether the defendants violated the plaintiff's Eighth Amendment right by failing to intervene in the attack, they are not entitled to qualified immunity at this juncture.  Therefore, the defendants' motion for summary judgment on the basis of qualified immunity is due to be denied.

(2)  Delay of Medical Care – Defendant McLemore

The plaintiff does not allege that defendant McLemore watched inmate Hastings assault the plaintiff and failed to intervene.  Rather, he claims that as he ran to the infirmary, defendant McLemore failed to immediately open the gate to allow

the plaintiff access to the infirmary.  (Doc. 1 at 5-6).  Therefore, the plaintiff's claim against McLemore is more appropriately a claim for delay in medical care under the Eighth Amendment, rather than a claim for failure to protect or intervene.

The United States Supreme Court has held that it is only deliberate indifference to serious medical needs which is actionable under 42 U.S.C. § 1983. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  Indeed, the conduct of prison officials must run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983.  *See Bass v. Sullivan*, 550 F.2d 229, 230-31 (5th Cir. 1977). Mere negligence is insufficient to support a constitutional claim.  *See Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979).  Moreover, an accidental or inadvertent failure to provide medical care, or negligent diagnosis or treatment of a medical condition, does not constitute a wrong under the Eighth Amendment.  *See Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).

A prison official acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment.  *See Brown v. Hughes*, 894 F.2d 1533, 1537-38 (11th Cir. 1990); *see also Harris v. Coweta County*, 21 F.3d 388, 394 (11th Cir. 1994).  Delay in access to medical treatment can violate the Eighth

Amendment when it is "tantamount to 'unnecessary and wanton infliction of pain.'" *Brown*, 894 F.2d at 1537-38.

"In contrast, delay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute an Eighth Amendment violation." *Hill v. DeKalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1187-88 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002). A medical need is considered serious when delay results in an inmate suffering "a life-long handicap or permanent loss." *Monmouth County Corr. Inst. Inmates v. Lorenzo*, 834 F.2d 326, 347 (3rd Cir. 1987). An inmate claiming an unconstitutional delay in medical treatment "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Easley v. Department of Corrections*, 590 Fed. App'x 860, 869 (11th Cir. 2014) (citing *Hill*, 40 F.3d at 1188, *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002)).

The undersigned notes that the plaintiff provides different versions of the incidents which occurred after Hastings stabbed him. In his complaint, he alleges defendant McLemore would not allow him through the gate to go to the infirmary. (Doc. 1 at 6). The plaintiff claims he fell to the ground, holding his neck. (*Id.*). He

alleges he laid on the ground in a pool of blood while officers surrounded him. (*Id*.). He asserts the officers did not help him and one remarked that he was dead. (*Id*.). The plaintiff claims at that point, McLemore opened the gate and the plaintiff crawled in, pulled himself to his feet, and went to the infirmary. (*Id*.).

In one of his responses to the defendants' motion for summary judgment, the plaintiff alleges McLemore "hesitated" in opening the gate. (Doc. 35 at 4). He claims he heard Lieutenant Scott yell on the radio for McLemore to let the plaintiff in and McLemore complied. (*Id*. at 4, 10). Once McLemore opened the gate, the plaintiff entered the breezeway and kneeled as "they began to look for the key." (Doc. 35 at 4). The plaintiff alleges once Officer Jackson found the key and opened the second gate, he was "up and running again" to the infirmary.[14] (*Id*.).

Notwithstanding the plaintiff's differing versions, the record is void of evidence that McLemore's alleged delay in opening the gate rose to the level of a constitutional violation. The plaintiff states that inmate Hastings attacked him at

---

[14]    The plaintiff also alleges the following for the first time in his response to summary judgment that "McLemore accidently dropped the key and Officer Jackson stood on top of it deliberately denying Mays access to the infirmary. Sgt. Shoebridge pushed Jackson off the key and open[ed] the second gate allowing Mays full access to the infirmary." (Doc. 39 at 2). These allegations against defendant Jackson were not included in the plaintiff's complaint. (Doc. 1). Neither has the plaintiff sought leave to amend his complaint to allege Jackson attempted to deny him access to the infirmary. Therefore, such claim is not properly before the court and will not be considered.

approximately 1:00 p.m.  (Doc. 35 at 3, 9; Doc. 39 at 2; Doc. 41 at 1).  The plaintiff further alleges that the assault lasted several minutes.  (Doc. 39 at 2).  Thereafter, the plaintiff ran towards the gate, holding his neck.  (Doc. 1 at 5-6; Doc. 35 at 4). However, the plaintiff does not dispute that he reached the infirmary at approximately 1:07 p.m.  (Doc. 21-5 at 7, 15).  Viewing the facts in a light most favorable to the plaintiff, a seven minute difference between the time the attack occurred and when the plaintiff reached the infirmary does not support a finding that McLemore's alleged delay in opening the gate was so great as to violate the plaintiff's constitutional rights.  Moreover, the plaintiff has failed to place verifying medical evidence in the record to establish the detrimental effect of McLemore's alleged delay.  *Easley v. Department of Corrections*, 590 Fed. App'x 860, 869 (11th Cir. 2014) (citing *Hill*, 40 F.3d at 1188, *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002)).

Neither has the plaintiff shown that McLemore intentionally delayed opening the gate to inflict unnecessary and wanton pain on the plaintiff.  *See Brown*, 894 F.2d at 1537-38.  The undisputed evidence shows that Lieutenant Scott called a code that inmates were fighting. (Doc. 21-1, Scott Aff. at 1). According to the plaintiff, he was running towards the gate and Officer Jackson was running behind him. (Doc. 41 at

3). There are no facts to indicate McLemore knew at this point whether the plaintiff was the victim in the assault, or whether he was the perpetrator and posed an immediate security threat.  Neither does the plaintiff dispute that once Scott directed McLemore to open the gate over the radio, he did so.  (Doc. 39 at 2).

Based on the foregoing, defendant McLemore's motion for summary judgment on the plaintiff's Eighth Amendment medical delay claim is due to be granted and the claim is due to be dismissed with prejudice.

(3)  Requests for Injunctive Relief

The plaintiff alleges there have been over one hundred (100) inmate-on-inmate assaults at St. Clair, including murders, in the last five (5) years.  (Doc. 1 at 6-7).  He claims that a lack of security and overcrowding has created a hostile, violent environment for inmates and officers.  (*Id.*).  The plaintiff further claims the defendants are aware of understaffing and the substantial risk of harm facing inmates.  (*Id.* at 7).  In addition to monetary relief, the plaintiff seeks "review and change in policies concerning security" and a review of St. Clair's "inmate-on-inmate [a]ssaults in the last ten (10) years."  (*Id.* at 4).

The remaining defendants are not the proper parties upon which the plaintiff's requested injunctive relief can issue. Specifically, defendant Shoebridge is no longer employed by the ADOC and there is no evidence that Lieutenant Scott, Officer Jackson, and Officer McLemore are in positions of authority within the ADOC to "review and change . . . policies concerning security," (doc. 1 at 4), as the plaintiff requests.[15] *See Feit v. Ward,* 886 F.2d 848, 858 (7th Cir.1989) (holding the proper defendants for injunctive and declaratory relief are the supervisory officials of the relevant government agency, sued in their official capacities).

The undersigned notes the plaintiff is one of nine (9) named plaintiffs represented by the Equal Justice Initiative in an action pending in this court.[16] Second Amend. Compl., *Cheatham v. Dunn, et al*., No. 4:14-cv-01952-VEH-HGD (N.D. Ala. Aug. 28, 2015), ECF No. 53. The named defendants include the following: ADOC Commissioner Jefferson Dunn, Associate Commissioner for Plans and Programs Terrance McDonnell, Deputy Commissioner for Maintenance Greg Lovelace, Institutional Coordinator Grantt Culliver, St. Clair Warden Dewayne Estes, Assistant

---

[15]     Lieutenant Scott states in her affidavit that she has no control over the staffing level of St. Clair.  (Doc. 21-1. Scott Aff. at 2).

[16]     The plaintiffs have requested class certification on behalf of current and future prisoners at St. Clair Correctional Facility.  Mot. to Certify Class, *Cheatham v. Dunn, et al*., No. 4:14-cv-01952-VEH-HGD (N.D. Ala. Feb. 22, 2016), ECF No. 82.

Warden Eric Evans, Assistant Warden Karen Carter, and Captain Gary Malone.[17]  *Id*. The plaintiffs allege in *Cheatham* that the defendants have been deliberately indifferent to their safety and conditions of confinement at St. Clair.  *Id*.  The plaintiffs specifically reference in *Cheatham* the incident involving the plaintiff and inmate Hastings which is the basis of the present action.  Second Amend. Compl., *Cheatham v. Dunn, et al*., No. 4:14-cv-01952-VEH-HGD (N.D. Ala. Aug. 28, 2015), ECF No. 53 at 37.

As part of their prayer for relief, the *Cheatham* plaintiffs request that the Court: (a) personally conduct an unannounced inspection of St. Clair and all relevant institutional records and files; (b) adjudge and declare that the acts and omissions of the defendants with regard to the classmembers violate the Eighth and Fourteenth Amendments to the United States Constitution; and (c) order the defendants to comply with the Constitution and enjoin defendants from subjecting the plaintiffs to cruel and unusual punishment.  Second Amend. Compl., *Cheatham v. Dunn, et al*., No. 4:14-cv-01952-VEH-HGD (N.D. Ala. Aug. 28, 2015), ECF No. 53 at 73-74). Therefore, it appears the plaintiff, represented by counsel, has a means to obtain the requested injunctive relief from the appropriate ADOC officials in *Cheatham*

---

[17]     Captain Carl Sanders was dismissed on September 21, 2015.  Order Granting Joint Mot. to Dismiss Carl Sanders, *Cheatham v. Dunn, et al*., No. 4:14-cv-01952-VEH-HGD (N.D. Ala. Sept. 21, 2015), ECF No. 61.

concerning the incident made the basis of this action.   Based on the foregoing, the undersigned recommends that the plaintiff's requests for injunctive relief be denied and this matter proceed against the remaining defendants on the plaintiff's requests for monetary relief.[18]

## V. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** the following:

A. That defendants Scott, Shoebridge, and Jackson's motion for summary judgment on the plaintiff's Eighth Amendment failure to intervene claims be **DENIED**;

**B.** That defendants Scott, Shoebridge, and Jackson's motion for summary judgment on the plaintiff's Eighth Amendment failure to intervene claims on the basis of qualified immunity be **DENIED**;

**C.** That defendant McLemore's motion for summary judgment on the plaintiff's Eighth Amendment medical delay claim be **GRANTED** and the claim be **DISMISSED WITH PREJUDICE**; and

**D.** That the plaintiff's requests for injunctive relief be **DENIED**.

---

[18]    While the *Cheatham* plaintiffs request appropriate costs for expert fees and collateral litigation expenses and any additional relief the Court may deem just and proper, the plaintiffs did not specifically request monetary relief.  Second Amend. Compl., *Cheatham v. Dunn, et al*., No. 4:14-cv-01952-VEH-HGD (N.D. Ala. Aug. 28, 2015), ECF No. 53 at 73-74.

## VI. Notice of Right to Object

Any party may file specific written objections to this report and recommendation.  Any objections must be filed with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objection.  Failure to object to factual findings will bar later review of those findings, except for plain error.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).  Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.  An objecting party must serve a copy of its objections on each other party to this action.

Upon receipt of objections, a United States District Judge will make a *de novo* determination of those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the findings of fact and recommendations made by the magistrate judge.  The district judge must conduct a hearing if required by law.  Otherwise, the district judge may exercise

discretion to conduct a hearing or otherwise receive additional evidence. Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record. The district judge also may refer this action back to the magistrate judge with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may only appeal from a final judgment entered by a district judge.

**DONE** this 27th day of December, 2016.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE